UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRILON BERDYNAJ,<br>Plaintiff,<br>v.<br>CITY OF NEW YORK ET AL.,<br>Defendants. | 26 Civ. 2126 (DEH)<br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court is Plaintiff Drilon Berdynaj's ("Plaintiff") motion for preliminary injunction, seeking to (1) enjoin the City from requiring Plaintiff to return to work on a "full duty" and "no restriction" basis or otherwise resign on August 31, 2026; (2) require the City to allow Plaintiff to return to work pursuant to his work unit's two day a week telework policy; (3) enjoin the City from terminating Plaintiff prior to judicial review; and (4) enjoin the City from conditioning withdrawal or reduction of his disciplinary charges upon Plaintiff's abandonment of this lawsuit or continued accommodation requests. Mot. Prelim. Inj., ECF No. 34. Plaintiff subsequently moved to expedite the decision on the motion given the August 31, 2026 termination date. ECF No. 39. For the reasons stated herein, Plaintiff's motion is **DENIED**.

## BACKGROUND[1]

This case arises from a years-long back-and-forth between the parties as to the necessity and appropriate form of disability-related accommodation requests. In 2018, Plaintiff began working for the New York City Department of Citywide Administrative Services ("DCAS") as an

[1] The briefs in this case are not exemplars of clarity from either side, but the facts as recited in this section are largely drawn from the parties' memoranda of law regarding Plaintiff's motion for a preliminary injunction; they are presented as background only and are not assumed to be true for purposes of adjudicating the motion.

Administrative Project Manager/Project Executive in the Real Estate Services' Design and Project Management Unit. Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction ("Pl.'s Mem. Law Supp.") at 1, ECF No. 35. In this senior management position, Plaintiff "reported to executive leadership, participated in strategic planning, coordinated projects, and worked with agency stakeholders," working primarily via computer, phone, and email, where he conducted document review and participated in meetings. *Id.* at 1-2. Occasionally, he also conducted site visits. *Id.* at 2.

Such was the working arrangement until the Covid-19 pandemic in 2020, during which Plaintiff worked remotely. *Id.* In May 2021, Plaintiff requested a disability accommodation to remain fully remote due to various chronic medical conditions, specifically "asthma, immotile cilia syndrome, bronchiectasis, and related respiratory illness, making him highly susceptible to pulmonary infection and complications." *Id.* For treatment, Plaintiff "requires airway-clearance vest therapy and nebulized treatment several times daily, with home-maintained equipment." *Id.* Further, his doctors say "that commuting, shared indoor exposure, dust, cold, exertion, and allergens may aggravate his condition." *Id.* Based on documentation supplied by Plaintiff to DCAS, DCAS approved his accommodation request and, in November 2021, extended it. *Id.* According to Plaintiff, he worked throughout this period "without documented deficiencies, discipline, or operational problems." *Id.*

For the next several years, Plaintiff was periodically required to renew his accommodation request, and starting in September 2022, DCAS began expressing concern regarding the indefinite nature of these requested extensions. For example, on September 12, 2022, DCAS denied Plaintiff a continued full time remote accommodation "because an 'indefinite' extension . . . burdened operations." *Id.* A few days later, DCAS reassigned Plaintiff from his senior management position into "a subordinate Project Manager role," and "portrayed the position as site visit focused." *Id.*

at 3. Despite the demotion and denied accommodation request, Plaintiff and DCAS appear to have sorted out an agreement where "Plaintiff continued performing assigned site visits while otherwise working remotely." *Id.* This working arrangement lasted for some time; in May 2023, DCAS approved an accommodation request that allowed Plaintiff to work remotely but required him to conduct site visits in person. *Id.*

Approximately a year later, in July 2024, however, DCAS denied continued full-time remote work "because an indefinite extension . . . 'would be an undue burden to the agency's operations.'" *Id.* Plaintiff sought to appeal, and despite the denial, "as standard agency practice," Plaintiff was told that his accommodation could continue until his appeal was decided. Berdynaj Declaration ("Berdynaj Decl.") ¶ 69, ECF No. 36. But, in May 2025, DCAS's position appears to have changed. On May 15, 2025, Plaintiff was ordered to return to the office three times a week and to use his leave time when his health prevented his compliance; three days later, DCAS began docking Plaintiff's accrued sick and vacation time on days he was required to be in office. Pl.'s Mem. Law Supp. at 4. Several renewed accommodation requests for full time remote work were summarily denied around this same time: once on May 19, 2025, and once on June 18, 2025. *Id.*

Meanwhile, DCAS began to suspect "Plaintiff was misusing time and leave." Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction ("Defs.' Opp'n") at 2, ECF No. 42. On August 8, 2025, DCAS contacted the New York City Department of Investigation ("DOI") to "determine whether Plaintiff had traveled outside the United States within the past four years," after Plaintiff's "supervisor reported that Berdynaj initiated a couple of Teams meetings from Albania" despite his medical restrictions that purportedly limited his ability to report to work in person. Rosen Declaration ("Rosen Decl."), Ex. 2 at 2-3, ECF No. 43-2. The DOI investigation found that between 2021 and 2025, Plaintiff took seven international trips, including to Cancun, Mexico (twice); Vienna, Austria; Orenjestad, Aruba; Punta Cana, Dominican Republic; Canada;

and Warsaw, Poland. *Id.* at 3-4. The investigation further discovered "that during six of the seven documented international trips, Berdynaj recorded work hours . . . while physically outside of the United States." *Id.* at 3. Accordingly, the DOI concluded "that Berdynaj, while on approved [reasonable accommodation] for a medical condition preventing him from returning to work, traveled internationally multiple times. In addition, Berdynaj teleworked from outside of the United States without authorization from DCAS." *Id.* at 4.

On August 25, 2025, DCAS revoked all of Plaintiff's approved vacation time and all telework, threatened AWOL status, reassigned supervision, and scheduled a medical examination with an independent medical examiner during Plaintiff's vacation. Pl.'s Mem. Law Supp. at 4. And then, on September 12, 2025, DCAS placed Plaintiff on an unrequested and involuntary FMLA leave, which was to be paid through March 6, 2026 and unpaid from March 9 to August 28, 2026. *Id.* DCAS indicated that August 31, 2026 was a mandatory return-to-work date and "barred extensions and directed Plaintiff to resign if he could not return." *Id.*

In addition to these actions, DCAS initiated disciplinary proceedings. On January 22, 2026, DCAS served Plaintiff's union with "'proposed disciplinary charges' that were unsigned and in Microsoft Word format, alleging false timesheets and documents, travel-related misconduct, false accommodations requests, and pay for time . . . not working." *Id.* at 5. Then, on March 25, 2026, nine days after Plaintiff initiated this action, DCAS served Plaintiff's counsel with "official," signed charges. *Id.* The substance of the charges was unchanged between the two dates. *Compare* January 2026 Disciplinary Charges, ECF No. 36-6, *with* March 2026 Disciplinary Charges, ECF No. 36-15. Over the next several days, Plaintiff was directly served with the charges through multiple channels. Pl.'s Mem. Law Supp. at 5-6. On April 30, 2026, a "Step I" disciplinary conference was conducted, and it thereafter became clear that DCAS was seeking termination as a penalty. *Id.* at 6. According to Plaintiff, during the conference, DCAS's counsel "said no

outcome short of termination or resignation was acceptable to DCAS unless Plaintiff returned three days weekly, worked remotely two days as a 'normal employee,' and dismissed this lawsuit." *Id.*

On May 5, 2026, the DCAS Deputy Director of Labor Relations recommended that Plaintiff be terminated and gave Plaintiff five days to either accept the recommended penalty or choose to proceed to a Step II disciplinary hearing or a hearing at the Office of Administrative Trials and Hearings ("OATH"). *See* Step I Determination, May 5, 2026, ECF No. 36-9. Three days later, on May 8, 2026, Defendant Commissioner Yume Kitasei affirmed that determination. *See* Am. Compl., ECF No. 14 ¶¶ 317-318. The current status of those proceedings is unclear from the papers filed by the parties.

Since April, Plaintiff has "agreed to report temporarily without waiving his claim for an accommodation of fully remote work (other than site visits)" but HR has "barred him without a 'full duty' or 'no restrictions' note." Pl.'s Mem. Law Supp. at 6. And, on July 22, 2026, Plaintiff discovered that his employer-based health insurance was cancelled, effective July 11, 2026. *Id.* at 8.

## LEGAL STANDARD[2]

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007). It is well established that to receive a preliminary injunction, the plaintiff must show (1) "a likelihood of success on the merits"; (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of the hardships tips in the plaintiff's favor"; and (4) that "the public interest would not be

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). "When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

## DISCUSSION

For purposes of adjudicating this motion, the Court assumes, without deciding, that *Younger* abstention does not apply to bar consideration of Plaintiff's claims, and that Plaintiff's claims are not time-barred. The Court begins its analysis by determining the likelihood of success on the merits, and then turns its discussion to irreparable injury. Because the Court does not find any irreparable injury, the Court concludes that the "drastic remedy" of a preliminary injunction is inappropriate.

### I. Likelihood of Success on the Merits

Plaintiff argues he is likely to succeed on his claims of (1) retaliation; (2) failure to provide reasonable accommodations; (3) disability discrimination; and (4) interference. Pl.'s Mem. Law Supp. at 16-24. Plaintiff brings these claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *Id.*

Under the ADA, the RA, the NYSHRL, and the NYCHRL, the Court applies the *McDonnell Douglas* burden-shifting analysis. *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (applying *McDonnell Douglas* to an ADA claim); *Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239, 267-68 (S.D.N.Y. 2023) (applying *McDonnell Douglas* to an RA claim); *Ellison v. Chartis Claims, Inc.*, 115 N.Y.S. 3d 53, 57-58 (N.Y. App. Div, 2d Dept. 2019) (applying *McDonnell Douglas* to an NYSHRL claim); *Cadet-Legros v. New York Univ. Hosp. Ctr.*, 21 N.Y.S. 3d 221, 225-26 (N.Y.

App. Div., 1st Dept. 2015) (applying burden-shifting analysis to NYCHRL claim). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. 792, 802 (1973). If the plaintiff meets this burden, the burden then shifts to defendants, who must offer a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that the disputed action was taken for those non-discriminatory reasons. *Id.* "Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more." *Heyman*, 198 F.3d at 72.

**A. Retaliation**

Although his briefs are not entirely clear, it appears that Plaintiff's primary theory of retaliation is that Defendants seek to terminate him because he initiated this lawsuit. Pl.'s Mem. Law Supp. at 21-23. Assuming, without deciding, that Plaintiff has met his burden in establishing a *prima facie* claim under this theory, Defendants have proffered a non-discriminatory reason for terminating Plaintiff. Specifically, Defendants assert that the disciplinary charges were brought because, *inter alia*, "while on approved [reasonable accommodation] for a medical condition preventing him from returning to work, [Plaintiff] traveled internationally multiple times. In addition, [Plaintiff] teleworked from outside of the United States without authorization from DCAS." Rosen Decl., Ex. 2 at 4. Defendants support this argument with documents, including a DOI "referral letter" to DCAS detailing the findings of their investigation, Rosen Decl., Ex. 2, and

records from the Department of Homeland Security showing Plaintiff's record of international travel.[3] Rosen Decl., Ex. 1, ECF No. 43-1.

With the Defendants having proffered a non-discriminatory reason for Plaintiff's termination proceedings, the burden then shifts to Plaintiff to show that the reason given is pretextual. While Plaintiff, in a conclusory manner, purports to deny the disciplinary charges against him, he does not, in his Reply, dispute any of the facts underlying those charges. He does not, for example, deny that he took international trips while representing to Defendants that he required a work-from-home accommodation because he was, for all intents and purposes, homebound; nor does he deny that he worked abroad without the necessary approvals under DCAS policies. *Compare* Defs.' Opp'n at 4 *with* Pl.'s Reply at 9-10. And he does not dispute that such work from abroad without the requisite approvals in violation of DCAS policies constitutes a valid basis for termination. *Id.* Instead, Plaintiff points to Defendants' "post-filing escalation" and conditional discipline to establish causation for purposes of his retaliation claim. Pl.'s Reply at 9-10. In essence, Plaintiff attempts to establish pretext primarily by relying on the temporal

---

[3] On Reply, Plaintiff argues that this is not "competent evidence," presumably because the documents are not authenticated and because there is "no testimony from any relevant DCAS decisionmaker." Plaintiff's Reply Mem. Law Supp. Mot. Prelim. Inj. ("Pl.'s Reply") at 2-3, ECF No. 51. This misstates the evidentiary burden required at the preliminary injunction stage. As the Supreme Court has observed, "the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010) (quoting *Univ. Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). In this Circuit, that means that courts "routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief," including affidavits, depositions, and sworn testimony. *Id.* at 52. Of course, courts should not rely on evidence that evinces disputed issues of fact when deciding a preliminary injunction motion, *Davis v. N.Y.C. Hous. Auth.*, 166 F.3d 432, 437-38 (2d Cir. 1999), but, as discussed in more detail above, Plaintiff does not dispute the facts within these documents. Further, Counsel for Defendants has sworn, under penalty of perjury, that the documents are authentic. Rosen Decl.

proximity between the initiation of his lawsuit and Defendants' "escalation" of disciplinary actions against him.

But "the temporal proximity between Plaintiff's [protected activity] and [his] termination, while sufficient to satisfy [his] prima facie burden of establishing retaliation, does not, without more, satisfy [his] ultimate burden of persuasion." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 263 (S.D.N.Y. 2015); *see also Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 802 (S.D.N.Y. 2020) (same holding "even under the more relaxed NYCHRL standard").[4] Here, Defendants have offered a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff does not dispute the underlying facts, that they establish a violation of DCAS policies, or that such violations amount to a valid basis for termination. In this context, he cannot rely solely on the temporal proximity between his initiation of litigation and the escalation of otherwise valid disciplinary charges.

Plaintiff contends that there is additional evidence of causation beyond temporal proximity, and cites *Lore v. City of Syracuse*, 583 F. Supp. 2d 345 (N.D.N.Y. 2008). But in that case, there was much more evidence of causation than there is here: there, the plaintiff was

> charged administratively for misconduct which frequently goes unpunished; barred from areas within the SPD which other officers frequently enter; threatened with criminal charges; received sub-par evaluations; and received offers of better treatment in exchange for the voluntary discontinuation of her complaint, all of which only occurred after she complained of gender discrimination.

*Id.* at 367. Here, Plaintiff contends that, in addition to the temporal proximity, there is at least one similar fact between this case and *Lore*: he was offered a choice between termination or dropping

---

[4] Many of the cases stating this proposition in the Second Circuit cite *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010), which the Circuit has recognized has now been abrogated, but only on other grounds. *See Brown v. City Univ. of New York*, No. 25-694, 2026 WL 456924, at *3 (2d Cir. Feb. 18, 2026).

his lawsuit. *See* Pl.'s Mem. Law Supp. at 21. But even if the Court were to credit the conditional offer as evidence of retaliation for the purposes of the preliminary injunction, that one fact alone is far from the plethora of evidence of retaliation in *Lore* described above. While it is possible (but by no means assured) that this fact, combined with the temporal proximity between Plaintiff's lawsuit and Defendants' disciplinary escalation, might be sufficient to withstand summary judgment, it is not sufficient in this posture. Given Plaintiff's concession that he worked from abroad without necessary authorizations and doing so constituted a sufficient basis for termination, the Court, preliminarily weighing all of the evidence before it, concludes that Plaintiff's meager evidence of causation is not sufficient to meet the preliminary injunction standard, which requires that the Plaintiff make a "clear showing," *Sussman*, 488 F.3d at 139, that Defendants' "proffered explanation is unworthy of credence," *Heyman*, 198 F.3d at 72. Accordingly, Plaintiff has not shown a likelihood of success on his retaliation claim.

**B. Failure to Accommodate and Disability Discrimination Claims**

For largely the same reasons, the Court finds that Plaintiff has not shown a likelihood of success on his failure to accommodate and disability discrimination claims, to the extent those claims seek prospective relief. On his accommodation claim, Plaintiff argues that DCAS is requiring him to return to work without restrictions or resign by August 31, 2026, rather than providing him with various accommodations including "full-time remote work, private treatment space, DCAS purchase of workplace respiratory equipment, nearer site assignments, and a temporary in-person return." Pl.'s Mem. Law Supp. at 7. Plaintiff also claims disability discrimination on the basis of the fact that others in his work unit are allowed two remote work days a week, while DCAS revoked all remote work from Plaintiff and placed him on involuntary leave.

But the Court cannot find that Plaintiff can establish a "clear showing" of entitlement to prospective relief on either claim with respect to the conditions of his employment going forward, for at least two reasons. *Sussman*, 488 F.3d at 139. First, on the current record, Plaintiff has not offered a coherent explanation regarding his requested accommodation of hybrid work, or why the denial of hybrid work amounts to disability-based discrimination. As Plaintiff explains it, his purported disability requires him to work in close proximity to very heavy medical equipment that he needs to use at regular intervals throughout the day, essentially rendering him homebound. Berdynaj Declaration ("Berdynaj Decl.") ¶¶ 36-38, 40-44, ECF No. 36. Despite this, he was discovered to have traveled internationally on more than half a dozen occasions, which Defendants say constitutes a basis for termination. Plaintiff attempts to explain by saying that, during his international trips, he traveled with his medical equipment and remained largely stationary, but that it would be impractical to commute to an office on a daily basis with that equipment. Supplemental Berdynaj Declaration ("Suppl. Berdynaj Decl.") ¶¶ 17-21. But now, seeking to avoid termination, Plaintiff is offering to come to the office several days a week—without explaining how such a hybrid schedule would be consistent with his description of his disability and his purported need to be in close proximity to medical equipment that cannot be transported on a regular basis. Berdynaj Decl. ¶¶ 77, 87. Perhaps there is some coherent explanation for these seeming inconsistencies, but Plaintiff has not, on the current record, satisfactorily explained these facts to the Court in a manner that would meet his heavy burden to establish an entitlement to preliminary relief.

Second, in light of the Court's preliminary conclusion that Defendants have established a valid, non-discriminatory reason for Plaintiff's termination, it is difficult for the Court to understand how Plaintiff's request for prospective relief with respect to the conditions of continued employment is not now moot. Defendants' return to work demand—which is the basis for

Plaintiff's reasonable accommodation and disability discrimination claims—was made in a letter dated September 5, 2025, *see* Letter from Hortensia Richards to Drilon Berdynaj, ECF No. 36-10. But as noted above, since then, *i.e.*, on April 5, 2026, Defendants have articulated a legitimate non-discriminatory basis for seeking to terminate Plaintiff, which, for purposes of this motion for preliminary relief, the Court finds that Plaintiff has failed to rebut. Given that his termination has already been initiated, Plaintiff has not explained how any request for prospective relief related to the conditions of his employment would not therefore now be moot. *Cf. Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (holding that a request for a reasonable accommodation made after an employee has been found to have engaged in a work rule violation justifying termination comes too late). Even if such claims are not technically now moot, the current record lacks a sufficient explanation from Plaintiff on this point (*i.e.*, how he can be entitled to relief with respect to his conditions of continued employment after Defendants have made what the Court has preliminarily determined to be a valid decision to terminate him altogether), such that the Court cannot conclude that Plaintiff has met his heavy burden of showing an entitlement to preliminary relief on these claims, to the extent that they seek prospective relief.

Finally, to the extent that Plaintiff asserts claims that seek retrospective relief for events that pre-date the events giving rise to DCAS's investigation into Plaintiff and recommendation to terminate him, those claims fail for failure to establish irreparable harm, as explained below.

## II. Irreparable Injury

"[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). Central to this showing is the inadequacy of legal remedies, such as money damages. *Hester v. U.S. Tennis Ass'n, Inc.*, No. 26 Civ. 3701, 2026 WL 2044690, at *3 (S.D.N.Y. July 14, 2026)

("Essential to a showing of irreparable harm is unavailability or at least inadequacy of a money damages award.").

Plaintiff argues that he faces irreparable harm in the form of the loss of his health insurance and subsequent disruption to necessary medical treatments, Pl.'s Mem. Law Supp. at 12-14, extraordinary financial hardship, *id.* at 14-15, and chill to protected speech, *id.* at 15-16. These injuries all stem from the investigation and disciplinary proceedings initiated against Plaintiff, and the harms only arise from his continued unpaid leave, set to expire on August 31, 2026, and subsequent resignation or termination. But Plaintiff has not shown a likelihood of success on his claims for prospective relief. Accordingly, any injuries resulting from the investigation and disciplinary actions taken against him, including the requirement that he return to work or resign, and his potential termination, cannot be the basis for a showing of irreparable injury. And with respect to claims for retrospective relief (*e.g.*, money damages to compensate Plaintiff for past alleged violations of his rights), Plaintiff has not articulated any irreparable harm. *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm.").

The remaining injury articulated by Plaintiff is that his speech will be chilled by the conditional nature of Defendants' disciplinary process.[5] Pl.'s Mem. Law Supp. at 15-16. Where a constitutional harm is alleged, there is a presumption of irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time,

---

[5] Plaintiff suggests that the injury is broader, in that *witnesses* "will withdraw, remain silent, or decline testimony . . . ." Pl.'s Mem. Law Supp. at 15. But Plaintiff has presented no evidence that anyone other than Plaintiff is aware of Defendants' statements that the disciplinary proceedings would be dropped if Plaintiff dismisses the lawsuit or withdraws his accommodation requests. Pl.'s Reply at 6 (acknowledging that "adverse involvement" of Agency counsel, who allegedly made the conditional demand, in disciplinary proceedings is "undisclosed").

unquestionably constitutes irreparable injury."). "Mere assertion of a constitutional injury," however, "such as a First Amendment harm, is insufficient to establish irreparable harm." *Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24 Civ. 1002, 2024 WL 3875793, at *8 (E.D.N.Y. Aug. 19, 2024); *Chan v. U.S. Dep't of Transp.*, No. 23 Civ. 10365, 2024 WL 5199945, at *46 (S.D.N.Y. Dec. 23, 2024) ("[E]ven when 'personal' constitutional rights are violated and the harm that accompanies the violation is remediable or compensable, the damage is not irreparable."). "Rather, the alleged constitutional deprivation must be convincingly shown." *Seventh Regiment Armory Conservancy, Inc. v. Knight*, 811 F. Supp. 3d 467, 478 (S.D.N.Y. 2025).

Here, the alleged chill to Plaintiff's speech is unfounded. Plaintiff argues that "he fears continued advocacy will trigger termination, forced resignation, or recasting protected requests as misconduct," citing a single vague and conclusory paragraph in his own declaration which states that the charges against him "affect how freely I can litigate." *See* Pl.'s Mem. Law Supp. at 15 (citing Berdynaj Decl. ¶ 145). But Plaintiff's own behavior suggests otherwise. Plaintiff has not previously been deterred from vigorously pursuing his rights, even *after* disciplinary proceedings were underway, and he continues to actively pursue them now. That is not to say that pursuing ones right necessarily disproves a chilling effect; but the Court cannot find on this thin record that Plaintiff has established such an injury here.[6]

---

[6] Although the Court does not directly address the merits of Plaintiff's interference claim, it concludes for the same reasons that, even if he had established a likelihood of success on the claim, he is not entitled to preliminary relief on it. That is, he cannot show irreparable harm on such a claim because he states only in conclusory manner—without any supporting facts—that he has somehow been hampered in pursuing his rights, which is insufficient to meet his burden of making a strong showing of an entitlement to preliminary relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is **DENIED**. The Clerk of Court is respectfully requested to terminate ECF Nos. 34 and 39.

SO ORDERED.

Dated: August 31, 2026

New York, New York

DALE E. HO
United States District Judge